Docket 18-8078, counsel when you're ready please proceed. Thank you your honors, good morning, may it please the court, counsel. My name is Letitia Abermatz and I am appearing on behalf of appellant Mr. Emmett. The issues before the court today are issues of a false arrest and excessive force. Not before the court today is an issue of municipal liability as the lower court did not find that there were a constitutional violation on either the false arrest or the excessive force and so that has not, that is not part of what we will be arguing today. With regard, I want to start out with the false arrest because I think that the law is clearly established and the law in my opinion is clearly established on both issues but I want to address the false arrest. One of the things that we did in our opening brief is we brought out the case Dornbos from the 7th circuit, it was a 2017 case. We brought that out in a footnote and I'm afraid that we did not make clear that even though Dornbos was a 2017 case and it was decided after this incident at issue in this But the cases that are relied on usually are when they're under cover or when it's a surprise. Here they had three police cars I guess with lights blinking. They were in uniform. They had already taken one person into arrest. What would have been added by a statement, by the way, we're police? Thank you your honor for bringing that up. I think that's very important because the lower court also relied, made the same sort of arguments and relied upon the video that was produced by the body cam of the law enforcement officer and what the lower court said was there were flashing lights, there was uniforms, there was a previous encounter of this particular law enforcement officer, Officer Armstrong with Mr. Emmett and so therefore Mr. Emmett knew that was law enforcement that was addressing him. However, if you look at that video, you're going to see that it's not that clear. For one thing, as we outlined in our brief, Mr. Armstrong does not park his car directly in the view of Mr. Emmett. It's uncontested that there were law enforcement officers around. The question is whether Mr. Emmett would have been aware that that was in that moment when Mr. Armstrong said, Morgan come here, whether or not that was a law enforcement officer. So your position is he would have known that there were lots of law enforcement officers around. He would have known that somebody was arrested. He would have known about these cars, but he did not know that the particular person that told him, come here, was an officer. Not exactly. The deposition testimony of Mr. Emmett was that he did not know that Mr. Lancaster had been arrested. If you watch the video, Mr. Lancaster- But he didn't say he didn't see other police cars, did he? He never saw. He did say he did not see police cars. Not a single car. No lights. Correct. Correct. And he also stated that he did not see lights. And he was rather intoxicated, right? He was intoxicated. It was a wedding celebration and he was intoxicated. So is the test what he would have known or what an officer reasonably would have assumed that a person like him would have known? Exactly. The test is not what he would have known. The test is what an officer reasonably would have known. In this circumstance, the officer gathered some people together and we see in the video, we see that Mr. Emmett is approaching the car, the truck, but we never really see if he gets to the truck, if he turns around and walks off. We don't know really what happens because the video doesn't give us that information. So as you know in the video, Mr. Armstrong was, did arrest or at least put a person in his car because the gentleman intoxicated didn't think it was very nice the way that Mr. Armstrong was speaking to the group. And so he was taken off away from that location around that planter that's mentioned quite a bit by the opposing council in their arguments around to the police car that was parked over there outside of that truck. And then while he was over there, he did some other things. He talked to some witnesses. He ordered some people to move here and to move there. And then when he finally came back around toward the pickup truck, Mr. Emmett was quite a distance away and it was nighttime. Yes, there were street lights, but it was nighttime. Again, we keep saying that the uniform of the officer was completely black. He was wearing a baseball cap. And so at night, this is not enough to have Mr. Emmett at that distance. And again, you need to look at the distance. Who was wearing the baseball cap? The officer. You say this distance, but the distance wasn't that far when Deputy Armstrong said, Morgan, Morgan, wanting to talk to him and then Morgan took off. Well, and that I think is a matter of opinion. The distance was far enough and there was a truck in between Mr. Armstrong and Mr. Emmett when he said, Morgan, come here. Well, it's on the video. It is on the video, yes. So it's not really opinion, we can see the video. Right. The opinion, I think though at the end of the day, it comes down to whether a person thinks that is close enough for Morgan Emmett at night in that situation to recognize who was coming at him. And while we're on that- We're talking about Grey Bull, Wyoming. Yes. And it's undisputed, I think, that Deputy Armstrong knew who Morgan Emmett was. It appeared that Deputy Armstrong did know who Morgan Emmett was. And is it also undisputed in the record that Mr. Emmett knew who Deputy Armstrong was? Mr. Emmett testified that he was familiar with Mr. Armstrong, but that he did not know him. And the fact that he fled, wasn't that also an indication to the officer that he knew that he was an officer? I mean, ordinarily, if just a plain person comes up and says, can I talk to you, you don't run. I'm glad you brought that up because in Deputy Armstrong's deposition testimony, he says that one of the reasons that he tased Morgan Emmett was for Morgan Emmett's own protection so nobody would attack him. Morgan Emmett's testimony is that he was running because he thought someone might be after him. A friend of Mr. Lancaster, he didn't know who, and so he began running. So I think that the very fact that Mr. Armstrong himself admits that there might have been people who might have been after Mr. Emmett is actually, goes toward Mr. Emmett's story that he was running because he didn't know who was after him. So if he was in fear that some other person was after him, why didn't he run towards the police instead of away from the police? Well that would assume that he knew where the police were. The police were, if you look at those diagrams that the opposing counsel has provided, the police are around in a completely different location. If you want to surmise that he was running toward the police and away from this individual, then he would have been running toward the police because he went around the south side of the planter and that would have gotten him to the police. You're down to 5.23, can you address the excessive force argument? Yes, I would love to do that. So, and again, just very quickly, I don't want to miss this failure to identify Dornbos. Dornbos has some very good cases and the one that I like the best is Yates from the 6th Circuit, 1991, where there's no mention of plainclothes and I think that's very important, but we do have a dark hallway, no identification itself, and the officer was not wearing a hat. With regard to the excessive force, the law is very clear in this jurisdiction. We've got Dixon in 1991, Casey in 2007, Weigel in 2008, that you must have a legitimate justification for use of force when the suspect poses no threat or has been subdued. And further, Kavanaugh, you may not use a taser when given no warning or chance to comply. And Kavanaugh goes on to say, a taser use is severe. That is a severe use of force in Kavanaugh's 2010 case. There was no immediate threat, and I think it's important to point that out because that comes in under Graham v. Conner. There was no immediate threat. Are you saying that there's never any chance of an immediate threat if someone is on their back and their arms and legs are free? No, Your Honor, I'm not. What about this case makes that so, then? Because in this case, we see a very relaxed person. This case reminds me of the case that in Catlin, which the Dornbos case talks about. Now, in that, they found that there was qualified immunity because of a mistaken identity, and the person they were looking for was a felon that was armed. But Catlin, they did not know, he did not realize until they finally, at the very end, identified themselves as a law enforcement officer. And additionally, the Dornbos case itself was a man who was in the subway, and it was not until an officer, plainclothes, that was a plainclothes, put his badge in front of the man's face, and at that time, Dornbos relaxed. And we see that in the video of this case, too. As soon as Morgan Emmett was rolled over on his back and could see who he was looking at, he was aware that it was a law enforcement officer, he visibly relaxed. And without any amount of time to comply with the order to roll over, he was tased. He was given the order to roll over, and then he was threatened to tase, and he was immediately tased. So there was no, this was a subdued person on his back, no indication that he was going to be an imminent, I think the word imminent in Graham versus Connor is critical, he was not an imminent danger to anyone at that moment. What if there's a dispute of fact as to whether he was subdued? Do you need to convince us that the record showed he was in fact subdued, or do you only need to convince us that that was an outstanding, genuine dispute of fact? I think for summary judgment motions that we only need to convince you that it was a genuine issue of fact. As long as there's ambiguity whether he is subdued or not, summary judgment would have been inappropriate. Correct. On the excessive force. Absolutely. Absolutely. And again, I do need to take a little bit of time for rebuttal if I can. Thank you. May I please take the court? My name is Eva Dawson and I represent Defendant Shannon Armstrong in his individual capacity. I request, or I reserve 14 minutes for my argument with one minute reserved for Mr. Reindell representing Defendant Brenner. The plaintiff, in the first count, the plaintiff raised the issue of whether or not Plaintiff Emmett knew that Officer Armstrong was in fact an officer. Let me just interrupt you. I'll give you a little extra time since I've done so, but can everyone here in the back, can you hear? Fine. If you can't, raise your hand and we'll raise the microphone. It always struck me as odd to say, if you can't hear me, would you raise your hand? But that's the standard vernacular question. Nobody raised their hand. Therefore, proving what? That's what I should have said, was please raise the microphone and speak loudly so everyone can hear. That's what I'll say next time. Yes, Your Honor, if I may proceed. Yes, please. With regard to the first count of lack of probable cause, what matters here, and Your Honor, you pointed out, is the test that considers what Officer Armstrong reasonably believed, and the facts as presented itself, it's pretty obvious on the facts that Officer Armstrong could reasonably believe that Plaintiff Emmett was aware that he, in fact, was an officer. It's important to notice that in Emmett's deposition, he did state that he knew that Officer Armstrong was an officer, and he also has seen him in his official uniform. So that does not seem to be a question. Now, with regard to probable cause itself, the plaintiff does not dispute that there and then being informed that Emmett participated in the fight. So he had a right to investigate this alleged bar fight and Emmett's involvement. Now... Had Emmett's name been identified to the officer? Did he know specifically that Emmett was being said to have been involved in the fight? Yes, Your Honor, it was. After Officer Armstrong arrested or handcuffed and guided Lancaster to a police car, as he was coming back, a bystander told Officer Armstrong that Emmett was the other one fighting or words to that effect. So after this notification, Officer Armstrong proceeded to call Emmett by his name, and when he called Emmett, Emmett, come here, and Emmett started first walking away and then running away. At this point, Officer Armstrong had a probable cause to arrest Emmett. And furthermore, and that would be with regard to violation of the city ordinance, specifically the second part that discusses obstructing or impeding or obstructing any officer in performing his duties. And clearly, Officer Armstrong was performing his duties of investigating the alleged bar fight. Furthermore, once on the ground, contrary to what the plaintiff claims, Emmett continued resisting Officer Armstrong, disobeying his orders to roll over and complying with his order and engaging in some kind of physical exchange that made Officer Armstrong to believe that he may pull him to the ground and engage in the ground combat. Right, well pause there, because this is on video. And I've watched those two or three seconds a few times. And what you have is Emmett is tackled, he turns over, he sees that it is in fact the deputy. The deputy says, roll over, and I don't remember if he said the word handcuff, but he tells him to roll over. A couple of seconds pass, and immediately after saying roll over, then he says, you're going to get tased like that, as though you better roll over. And no sooner was that last consonant D, you're going to get tased than in fact the taser was activated. In other words, did Emmett even have an ability to comply before he was tased? And is that what decides this issue? Yes, Your Honor, thank you for this question. From the moment when Emmett decided to run away from Officer Armstrong, he could have stopped, he could have complied with his orders. Once on the ground, he could have turned on his stomach and allowed Officer Armstrong to continue with the arrest. Now, with regard to the statement, I'm going to tase you, and then the conduct itself. The burden is on the plaintiff to show that this right was clearly established. In other words, that Officer Armstrong had a duty to pause, give Plaintiff Emmett time, and then tase him. The situation, as you can see, Your Honor, on the video, was quickly escalating. We are talking about seconds here, maybe 20, 30 seconds. Officer Armstrong had to make a split-second decision. He decided to use a taser because Emmett was not compliant with his orders. So instead of engaging in a ground combat, he used a taser, which was a reasonable use of force in those circumstances. What if he had tackled him and immediately tasered him? Would your position be different then? Your Honor, my position is that at the point when Emmett decided to run away from the officer, officer could use a reasonable force that the officer perceived as being reasonable in circumstances to subdue the subject. So at this point, he arguably could use a taser to make Emmett comply. You don't think that a warning would have had to be given at all? He provided, as Officer Armstrong in his deposition explained, the warning was provided for the safety of potential other officers, but he did warn him that he's going to be... Are you arguing to us that no warning would have had to be given at all? There was a warning, but I don't believe it would be required. How do you get around our Tenth Circuit case of Levy-Tucker? It says that tasing a nonviolent misdemeanant who appeared to pose no threat and was given no warning or chance to comply is a violation. Your Honor, with regard to nonviolent and not posing threat, what is in Officer Armstrong's mind is that Emmett was engaged in the fight. That's the mindset that Officer Armstrong has when he chases after Emmett. So what we have is Officer Armstrong receives 2911 calls or he responds to 2911 calls. He's told that Emmett engaged in a bar fight, and then he sees Emmett running away. In Officer Armstrong's mind, he could reasonably believe that he is still a threat to other people potentially, but he could also be a threat to Officer Armstrong. Do we measure that safety concern from the 911 calls or when he's running after Emmett, or do we measure the safety threat only after Emmett is down on the ground on his back, not kicking, not hitting? At that moment, we measure whether or not there was a safety threat. Your Honor, my position is that as we are looking through what Officer Armstrong reasonably believed to be happening, it's from his perspective and the totality of circumstances. So we would consider the entire situation. When he's responding to a call, he appears to be responding by himself. We know from the video and the position that there was at least one more officer present, but he's addressing Emmett in a group of intoxicated men. He's by himself, and then once he tackles or pushes Emmett to the ground, that just partly kind of codifies in Officer Armstrong's mind the situation that Emmett can be posing a threat to him. Wasn't there also some testimony that Emmett was grabbing Armstrong's leg or something, and also that when he was over on his back, he was laughing at him? Yes, Your Honor. Thank you for this question. That is correct. Are those facts relevant? Yes, Your Honor. Those facts go to the immediate threat. That would be the second factor of Granby Connor, and Officer Armstrong testified that he felt on his left ankle, Armstrong's right arm as he was wrapping around his ankles, and also you can see on the frame-by-frame images, I believe that the images start in the 3,000 section. I believe that's image 3,384 that shows there is Emmett's arm on the kind of pushing towards, or directed towards to the right, and that would be where Officer Armstrong was standing. How about the laughing? The laughing, Your Honor, that just shows, once again highlights Emmett's ignorance or disobeying or not being afraid of the situation of Officer Armstrong in ignoring his order, just codifies further that he was not to obey by Officer Armstrong's orders. So those facts are also relevant to deciding the Granby Connor test. But we're talking about two seconds from the time that he rolls over and there's eye contact between these two men and he was tased. In other words, he's told, roll over, and less than two seconds later he's tased. Don't you have to give the person apprehended an opportunity to roll over? Your Honor, plaintiff Emmett had plenty of opportunities to comply with Officer Armstrong's orders. He could have stopped, he could have rolled over when he was told the first time, rolled over and he said he laughed at Officer Armstrong. So in order to decompress or de-escalate the situation, Officer Armstrong used a taser one time just to subdue Plaintiff Emmett so that he could be handcuffed. And as you can see on the video, even after being tased, Emmett still is noncompliant and still resists the arrest by the other officers. Can we look at post-tasing behavior to judge whether it was reasonable to impose the taser in the first place? Your Honor, I would agree with you that I would say no because it has to be what... Because the taser just changed the whole universe at that point. A person might react violently after being tased because he's a downright man about it, but he wouldn't have had that experience before. I mean, I'm not sure that post-tasing behavior is proper legitimate evidence of the situation before being tased. Do you have any case law that supports you on that? No, Your Honor, I would agree with you that just kind of, I guess, with regard to the first tasing, we need to look at as to what facts and circumstances Officer Armstrong had in front of him. But we're not going to ask what the officer himself thought. We're going to ask what a reasonable officer would have thought. Isn't that the test? Yes, Your Honor. With regard to the second tasing, it just goes to show more so that it was not some kind of malicious tasing of Plaintiff Emmett by Officer Armstrong. The only reason was to subdue him and make him compliant so that Officer Armstrong could de-escalate the situation that was rapidly evolving. Are you going to leave some time for Mr. Wright? Yes, I don't have anything else. I just want to respectfully ask on behalf of Officer Armstrong that you affirm the decision of the lower court. Thank you. May it please the Court, Counsel, Richard Wright out on behalf of Chief Brenner in his official capacity. In light of the concession of counsel and the appellant's opening brief indicating they're not pursuing the municipal claim against Chief Brenner in his official capacity, I think the less said by me at this juncture, the better. We'd simply submit we believe the claim has been waived. I'm confused. Are they simply saying they're not pursuing it on this appeal, or are they saying they're waiving the right? Because if we were to reverse and find that there was an unconstitutional behavior here, what would that do to the claim against the municipality at that point? Do you think they've waived that claim? I do, Your Honor. If they don't brief it and they don't argue it in their opening brief, and given the concession, I think they do waive it. Did they concede that they are pursuing the claim at all, or did they simply concede we're not raising it on this appeal? Well, since this court can affirm or reverse the decision of the lower court on any basis that is supported by the record, it's incumbent, I believe, upon counsel for the appellant to brief the issues that they think need to be addressed, which is why I filed a brief that addressed all of those issues as well. And by failing to do that, it makes it impossible for me to respond to any of their arguments. I shouldn't have to wait until the case goes back on appeal before I have a chance to argue the case and debrief it effectively. What they've done is waive that appeal, and I think the case law from this court is very clear on that. We'd submit, Your Honor. Thank you. Thank you for your arguments. The case is submitted. Oh, you still have a minute, sorry. Thank you, Your Honor. I think first I should address the issue raised by Mr. Rideout. It was not an error of the court to be brought before this court because the court found there were no constitutional violations. Until that issue is resolved, it does not even get to municipal liability, so in no way did we waive any claims that we have against the town of Grayball. Your argument is the district court never ruled on that subject. They did not rule on it. Therefore, there was no order out there which you could have appealed in any event. Your Honor, that because the— Is that correct or not correct? Yes, because the lower court said there was no constitutional issues. It did not get to the matter of municipal liability. It was just simply not addressed. I do want to also mention in my 11 seconds, counting down, that Armstrong brings up this issue about being grabbed by the leg. As we explained in our brief, that was never, ever brought up, even when he was being investigated for his job and it was not brought up in his police report. It is something that certainly is also a genuine issue of material fact. I do ask this court to reverse the lower court and let this case go forward. Thank you. The case is submitted. Thank you for your arguments.